UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOLANCO SCHOOL DISTRICT, | : |
| Plaintiff, | : |
| v. | :  No. 5:15-cv-02659 |
| C.H.B., by and through her parent, B.B.; | : |
| B.B., in her own right, | : |
| Defendants. | : |

**MEMORANDUM OPINION**

**Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 14 - Granted**
**Defendants' Motion for Judgment on the Administrative Record, ECF No. 13 - Denied**

**Joseph F. Leeson, Jr.**                                                                                           **August 9, 2016**
**United States District Judge**

### I.      Introduction

This action was brought by Plaintiff Solanco School District against Defendants C.H.B ("Student") and her parent B.B. ("Parent") under § 504 of the Rehabilitation Act of 1973. The District seeks the reversal of a decision by a Pennsylvania hearing officer, who held that the District denied the Student a "free appropriate public education" under § 504, and who awarded compensatory education to the Student. Because Defendants' claims are time-barred under § 504, judgment is warranted in favor of the District.

### II.     Factual and Procedural Background

### A.     Factual Background

Parent and Student were residents of the District from August 2003 through the conclusion of the due process hearing in January 2015. Administrative Record ("A.R."), Ex. 2, at

1

2, 4, ECF No. 10. Student has been diagnosed with a seizure disorder and requires a prescription medicine (Diastat) for emergency treatment of seizures. Only an individual with proper training and familiarity with the individual manifestations of Student's seizures may administer the medication. *Id.* at 3-4.

In summer 2003, Parent made an appointment with District personnel to have Student enrolled for kindergarten and to have Student screened for "full day" kindergarten under a program offered by the District for enhancing literacy skills. *Id.* at 4. During this screening appointment, Parent told the screening official that she was concerned about Student's seizure disorder and possible developmental delays. *Id.*[1] Parent did not make a written request for evaluation of Student. *Id.* No District official provided Parent a form to request an evaluation, and no official told Parent that she was required to submit a written request for an evaluation. *Id.*

Student's scores on the literacy screening showed the need for "full day" kindergarten instruction. *Id.* at 4-5. A District representative advised Parent that the full day kindergarten program would involve bussing Student to the morning session at one school, then bussing Student to another school for the afternoon session. *Id.* at 5. Parent stated to District personnel that she was concerned about Student's safety on the bus in the event of a seizure. *Id.*[2] Parent also spoke to at least one employee of the District's contracted bus company about Student's seizure disorder; the employee stated that if Student were to suffer a seizure while on the bus, the bus drivers would not be able to administer Diastat to Student but would pull over and call 911. *Id.*

---

[1] This finding by the hearing officer is disputed by the District. *See* Pl.'s Counter Statement to Defs.' Statement of Facts ¶ 5, ECF No. 16-2. ("Parent's credibility about when and to whom she spoke about Student is suspect, and was contradicted by multiple witnesses.").

[2] This finding by the hearing officer is also disputed by the District. *See* Pl.'s Counter Statement to Defs.' Statement of Facts ¶ 11.

Because of Parent's concerns about Student's seizure disorder, Parent did not complete the enrollment process with the District and decided instead to retain persons from the Amish community to provide tutoring services to Student. *Id.* at 6. These persons, who provided instruction to Student from 2003 through the 2013-14 school year, were not Pennsylvania certified teachers and did not teach Student the standard Pennsylvania curriculum. *Id.*

The District did not conduct an evaluation of Student under either the Individuals with Disabilities Education Act ("IDEA") or § 504 at any point during that period of time. *Id.* The District also did not inquire into the nature of Student's homeschooling and or initiate any truancy proceedings. *Id.* In 2014, Student was enrolled in a cyber-charter school at the ninth-grade level. *Id.* at 7.

**B.     Procedural History**

Parent filed a due process complaint with the District on October 13, 2014, alleging that the District had denied Student a "free and appropriate public education" ("FAPE") and seeking compensatory education under both the IDEA and § 504. A.R., Ex. 14. The matter proceeded to an administrative due process hearing before Hearing Officer William Culleton. Testimony and documentary evidence were presented over the course of two days of hearings held on November 25, 2014, and January 12, 2015, and the hearing officer issued a written decision on February 19, 2015.

In his decision, the hearing officer determined, first, that "there [was] no evidence that the Student has been evaluated and found to be a child with a disability under the IDEA." A.R., Ex. 2, at 10. Although "there [was] some evidence that Student has a condition that might qualify as a disability as defined by the IDEA . . . there [was] no evidence that any such disability requires special education or related services under the IDEA." *Id.* The officer also determined,

however, that "Student's seizure disorder, at all relevant times, met the legal test of section 504 and Pennsylvania regulations for a disability that prohibits participation in school in the absence of accommodations." *Id.* at 11. Accordingly, the hearing officer "analyze[d] the record solely under section 504 requirements." *Id.* at 10.

In considering these requirements, the officer determined that "the District knew that the Student was a school-age child living within the District's geographical area, and thus was 'otherwise qualified' under section 504." *Id.* Further, "Parent put the District on notice that Student was experiencing a seizure disorder that required accommodations in order to provide Student with access to public education." *Id.* The officer determined that "[u]nder these circumstances, the District was obligated to seek Parent's permission to evaluate Student for section 504 accommodations." *Id.* at 10-11. He concluded that the District's failure to seek an evaluation constituted a failure to comply with its "child find" obligations under § 504, and that "this failure began in July 2003 and continued until May 2014, when Parent sought legal counsel and was advised of her rights." *Id.* at 15. The officer rejected the District's argument that "it had no obligation to seek permission to evaluate student because Parent made no such request in writing," because, in his view, the District's child find obligations included a duty to respond to Parent's oral requests even in the absence of a written request. *Id.* In sum, the officer concluded that "the District was obligated by its child find duties to provide at least a reasonable response to Parent's multiple oral requests for an evaluation and accommodations for Student's section 504 disability," and he concluded that the District had failed to meet those obligations. *Id.* at 16. The District therefore "failed to provide a free appropriate public education" to Student, "contrary to its obligations under section 504." *Id.* at 24.

Based on these conclusions, as well as other equitable considerations, the hearing officer ordered that compensatory education be provided to Student "in addition to the services of the cyber-charter school, in an amount sufficient to enable Student to graduate from the cyber-charter school or any Pennsylvania public school with a regular high school diploma." *Id.* at 23. Specifically, the officer ordered "provision of at least two hours per school day attended by Student for four years or until Student graduates from the cyber-charter school." *Id.* at 23.

Following the hearing officer's decision, the District appealed the decision to this Court, and the parties each moved for judgment based on the administrative record.

### III. Legal Framework

#### A. Section 504 and the IDEA

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(b)(2)(B), "prohibits discrimination on the basis of disability by programs that receive federal funds." *See P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009). The federal regulations promulgated under § 504 with respect to education provide that a "recipient that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction." 34 C.F.R. § 104.33(a). In addition, § 504 imposes an affirmative duty on schools "to identify a disabled child 'within a reasonable time after school officials are on notice of behavior that is likely to indicate a disability,'" which is referred to as the "child find" duty. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) (quoting *W.B. v. Matula*, 67 F.3d 484, 501 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007)). In order to establish liability under § 504,

> a plaintiff must prove that (1) he is "disabled" as defined by the Act; (2) he is "otherwise qualified" to participate in school activities; (3) the school or the board

5

>of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school.

*Id.*

Similarly to § 504, the Individuals with Disabilities Education Act ("IDEA") "requires that institutions receiving federal education funding provide a free and appropriate public education ('FAPE') to disabled children." *P.P.*, 585 F.3d at 729. "The school district must conduct an evaluation of the student's needs, assessing all areas of suspected disability, before providing special education and related services to the child." *Id.* (citing 20 U.S.C. § 1414(b)). In addition, the IDEA also includes "child find" provisions, requiring "that a state have a system in place to identify, locate, and evaluate all children in the state who have disabilities and need special education and related services." *Id.* (citing 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.111(a)).

In sum, "[t]he IDEA and § 504 of the Rehabilitation Act do similar statutory work." *Id.* at 735.

>The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide. Section 504 of the Rehabilitation Act is parallel to the IDEA in its protection of disabled students: it protects the rights of disabled children by prohibiting discrimination against students on the basis of disability, and it has child find, evaluation, and FAPE requirements, like the IDEA.

*Id.*

Alongside these similarities, however, there are also important differences between the two statutes. *See generally* Perry A. Zirkel, *A Comprehensive Comparison of the IDEA and Section 504/ADA*, 282 Ed. Law Rep. 767 (2012). Notably, the two statutes differ in complexity and scope. With respect to complexity, whereas the IDEA "contains a detailed 'web of procedural regulations . . . [that] govern[ ] the school district's identification, assessment and

treatment plans for disabled students,'" the text of § 504 is "short and straightforward." *H. v. Montgomery Cty. Bd. of Educ.*, 784 F. Supp. 2d 1247, 1258 (M.D. Ala. 2011) (quoting *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453–54 (5th Cir. 2010)). With respect to the scope of each statute's coverage, "the IDEA definition of disability is limited to a discrete list of classifications that necessitate, due to their adverse effect, special education, whereas the Section 504 definition of disability has an open list of impairments that substantially limit one or more major life activities, not just learning." Perry A. Zirkel, *The Public Schools' Obligation for Impartial Hearings under Section 504*, 22 Widener L.J. 135, 137 (2012) (footnotes omitted). *See also Brendan K. ex rel. Lisa K. v. Easton Area Sch. Dist.*, No. 05-4179, 2007 WL 1160377, at *12 (E.D. Pa. Apr. 16, 2007) ("Although the two laws overlap significantly, it is well recognized that Section 504 covers more students than does IDEA.") (quoting *Grant v. St. James Parish Sch. Bd.*, No. Civ. A. 99-3757, 2000 WL 1693632 at *4 (E.D. La. Nov.8, 2000)).[3] In short, "[i]n contrast to the IDEA's imposition of specific, affirmative obligations, Section 504 blankly forbids discrimination on the basis of disability in any context. It is a bludgeon to the IDEA's stiletto, protecting a broader swath of the population without describing a precise manner of compliance." *Weber v. Cranston Pub. Sch. Comm.*, 245 F. Supp. 2d 401, 406 (D.R.I. 2003).

---

[3] For example,

> some students with attention deficit/hyperactivity disorder ("ADHD") might not meet the eligibility standards under the IDEA because their impairment does not adversely affect their educational performance. However, if those students' ADHD substantially limited a major life activity, they would qualify for protection under Section 504/ADA. . . . Thus, a class of students with disabilities exists who are entitled to the protection of Section 504/ADA but not to the protection of the IDEA.

Peter J. Maher, Note, *Caution on Exhaustion: The Courts' Misinterpretation of the IDEA's Exhaustion Requirement for Claims Brought by Students Covered by Section 504 of the Rehabilitation Act and the ADA but not by the IDEA*, 44 Conn. L. Rev. 259, 2676-77 (2011).

B.  **Standard of Review**

> The court exercises plenary review over the Hearing Officer['s] legal conclusions. The Third Circuit has not ruled on the standard of review that should be applied to fact finding in a Rehabilitation Act case that arises from an IDEA due process hearing.
>
> In IDEA cases it is clear that the Court "applies a modified version of *de novo* review and is required to give due weight to the factual findings of the [hearing officer] . . . [but] [c]ourts are divided as to whether the "due weight" standard applies to administrative findings of fact in the Rehabilitation Act context.

*Centennial Sch. Dist. v. Phil L. ex rel. Matthew L.*, 799 F. Supp. 2d 473, 481 (E.D. Pa. 2011) (first alteration in original) (citation omitted) (quoting *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006)). It is unnecessary to resolve this issue in this case because the dispositive issues in this appeal are pure questions of law.

IV. **Analysis: Defendants' claims are time-barred under the applicable statute of limitations.**

The District's primary contention is that the hearing officer misinterpreted the statute of limitations that applies to Parent's § 504 claims, which, properly interpreted, bars Parent's claims in their entirety. Pl.'s Br. Supp. Mot. 6, ECF No. 14-2.

"Section 504 does not have its own statute of limitations." *P.P.*, 585 F.3d at 735. In *P.P.*, however, the Court of Appeals for the Third Circuit held that "the IDEA's two-year statute of limitations applies to claims made for education under § 504." *Id.* at 737; *see also D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012) ("[T]he IDEA statute of limitations applies to § 504 claims premised on IDEA obligations, such as those invoking Child Find and FAPE duties.") (citing *P.P.*, 585 F.3d at 735–37)). In *P.P.*, the plaintiffs made "child find and FAPE claims under both the IDEA and [§ 504 of] the Rehabilitation Act," and "[a]ll of the plaintiffs' § 504 claims [were] premised on their IDEA claims—they ma[d]e no separate claim of disability discrimination under § 504." 585 F.3d at 736. Observing that "there are few federal statutes as

8

closely related, and under which such similar claims may be brought, as the IDEA and § 504 of the Rehabilitation Act," the court determined that "the IDEA's limitations period is a better fit for education claims made under the Rehabilitation Act than the [state] personal injury statute of limitations," which some district courts had previously used in § 504 cases. *Id.*

The IDEA statute of limitations, which was enacted in 2004,[4] bars claims that are not brought within two years of "the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C); 34 C.F.R. § 300.511(e).[5] This statute of limitations is governed by the "discovery rule," meaning that the limitations period "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation—whichever comes first." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 614 (3d Cir. 2015) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010)).

The IDEA statute of limitations has two statutory exceptions: it does not begin to run if a party has been prevented from timely filing suit because of either "(i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the

---

[4] "Prior to 2004, the IDEA did not include a statute of limitations." *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015).

> Congress found this problematic because parents could knowingly wait for many years to file complaints, resulting in school districts that were "often surprised by claims . . . involving issues that occurred in an elementary school program when the child may currently be a high school student." H.R. Rep, 108–77, at 115 (2003). Waiting many years to bring actions on behalf of a child, Congress reasoned, jeopardized that child's education and created distrust between school administrators and parents. *Id.*

*Id.* at 608-09.

[5] "[T]he IDEA statute of limitations applies to claims brought after it was passed in 2004, even if the conduct occurred before its passage." *D.K.*, 696 F.3d at 244 (citing *Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 413–16 (3d Cir. 2010)).

9

complaint; or (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent." 20 U.S.C. § 1415(f)(3)(D)(i)-(ii).[6] With respect to the second exception, concerning the withholding of information,

> the text of subsection (ii) plainly indicates that only the failure to supply *statutorily* mandated disclosures can toll the statute of limitations. In other words, plaintiffs can satisfy this exception only by showing that the school failed to provide them with a written notice, explanation, or form specifically required by the IDEA statutes and regulations.

*D.K.*, 696 F.3d at 246.

In the present case, prior to the evidentiary hearings before the hearing officer, the District filed a motion with the officer to dismiss Parent's IDEA and § 504 claims as time-barred by the two-year IDEA statute of limitations. A.R., Ex. 13.[7] The hearing officer addressed this motion on the first day of the hearings and issued an oral ruling at the close of that day's hearings. *See* A.R., N.T. 216-23. The hearing officer found, first, that "as to the knew or should-have-known date, the evidence . . . is very preponderant" that in August 2003, "Parent knew about the action that formed the basis of her [2014 due process] Complaint." N.T. 217:11-14. In other words, he found that "there's no doubt that the Parent knew" in August 2003 "that her child was not going to be accommodated" by the District. N.T. 217:17-19. The officer therefore concluded that statute of limitations timeline started to run in 2003 and, "if the [IDEA] exceptions did not apply, would have run out two years from that point." N.T. 217:21-23.

---

[6] These statutory exceptions "preclude[ ] application of common law tolling doctrines and [are] therefore the exclusive exceptions to the IDEA's two-year statute of limitations." *G.L.*, 802 F.3d at 611. For example, the Third Circuit has specifically rejected the "continuing violation" doctrine in this context. *Id.*

[7] At the time of this motion, both the IDEA and § 504 claims were under consideration, as the hearing officer had not yet made his ruling that Student was not shown to be eligible under the IDEA.

10

The hearing officer then went on to address the two statutory exceptions to the IDEA statute of limitations. He found that the first exception did not apply, as there was "no evidence of a misrepresentation made to the Parent by the School District." N.T. 218:4-6. However, the officer found that the second exception, regarding the withholding of statutorily required information, did apply. The officer found that at the time of the kindergarten screening, Parent told a District representative that she had concerns "about the child's developmental status, and about developmental delays," *see* N.T. 220:11-23, and that despite Parent's communication of these concerns, the District did not evaluate Student's eligibility for special education or for § 504 accommodations, *see* N.T. 219-220, nor did it provide prior written notice of its refusal to evaluate Student, as required under the IDEA. N.T. 222:10-25 (citing 34 C.F.R. § 300.503 ("Written notice . . . must be given to the parents of a child with a disability a reasonable time before the public agency . . . [r]efuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child.")). The officer found that the District's failure to provide this prior written notice "cause[d] [Parent] not to file for due process." N.T. 223:7-8. Thus, because the hearing officer found that the District had withheld information required under the IDEA, and that such failure caused Parent not to file for due process, he concluded that the second exception to the IDEA statute of limitations applied, and he denied the District's motion to dismiss the claims as time-barred.[8]

The hearing officer rightly determined that the applicable statute of limitations in this case is the IDEA statute of limitations. While Parent's only remaining claims are those under § 504, it is nevertheless appropriate to apply the IDEA statute of limitations because Defendants

---

[8] On December 22, 2014, the District moved for reconsideration of the hearing officer's ruling on the statute of limitations issue. A.R., Ex. 8. In a Memorandum and Order dated January 8, 2015, the hearing officer denied the District's motion. A.R., Ex. 6.

11

are seeking compensatory education as a remedy and their claims are thus "for education." *See P.P.*, 585 F.3d at 737 ("[T]he IDEA's two-year statute of limitations applies to claims made for education under § 504 of the Rehabilitation Act").[9] Further, the Court adopts the hearing officer's finding that the two-year statute of limitations began to run in August 2003, when Parent knew or should have known "that her child was not going to be accommodated" by the District. *See* N.T. 217:17-19.[10] Accordingly, as the hearing officer determined, the two-year limitations period would have expired in 2005, absent the application of any tolling provision.

The hearing officer erred, however, in determining that the "withholding information" exception applies in this instance. As the District points out, the text of the "withholding information" exception explicitly refers only to information required under the IDEA. *See* 20 U.S.C. § 1415(f)(3)(D)(ii) (referring to the withholding of information "required under this subchapter"). In view of the hearing officer's uncontested determination that Student was not shown to be a child with a disability under the IDEA, the District did not have any disclosure obligations to Parent under the IDEA. *See D.S. v. Neptune Twp. Bd. of Educ.*, 264 F. App'x 186, 189-90 (3d Cir. 2008) (holding that "there is no evidence that Congress intended IDEA to protect

---

[9] By contrast, where § 504 claims are not "for education," courts continue to apply the relevant state statute of limitations. *See, e.g., M.C. ex rel. R.C. v. Perkiomen Valley Sch. Dist.*, No. CIV.A. 14-5707, 2015 WL 2231915, at *8 n.9 (E.D. Pa. May 11, 2015) (applying Pennsylvania's personal injury statute of limitations instead of the IDEA statute of limitations to claims brought by a student and her parents under § 504 and the ADA "seek[ing] damages to remedy anxiety and emotional harm arising from a co-student's sexual touching of [the student] on the school bus").

[10] Defendants argue that the statute of limitations did not begin to run until Parent discovered her legal rights in 2014, when she contacted an attorney. Defs.' Reply Br. 4, ECF No. 15. However, as set forth above, under the discovery rule, the limitations period begins to run once a plaintiff discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation. Here, as the hearing officer properly found, Parent discovered the facts constituting the alleged violation—namely, that the District was not going to accommodate Student—in August 2003.

the rights of children with a disability who have not been determined eligible for special education services" (internal quotation marks omitted)).

Further, even if the "withholding information" exception is applied by analogy to § 504, the District did not withhold any information that it was required to provide under these circumstances. As the hearing officer recognized in his analysis of the statute of limitations, the IDEA regulations specifically require school districts to provide prior written notice whenever they refuse to initiate an evaluation of a child with a disability. *See* 34 C.F.R. § 300.503. In addition, the IDEA regulations include detailed instructions for the content and form of such notice. *Id.*[11] Further, Pennsylvania regulations implementing the requirements of the IDEA provide that if parents make an oral request for an evaluation "to any professional employee or administrator of the school entity, that individual shall provide a copy of the permission to evaluate form to the parents within 10-calendar days of the oral request." 22 Pa. Code § 14.123.

By contrast, the § 504 regulations simply require school districts to implement "a system of procedural safeguards that includes notice," 34 C.F.R. § 104.36, but do not provide further instructions concerning the circumstances under which such notice is required. Although the § 504 regulations provide that "[c]ompliance with the [IDEA's] procedural safeguards . . . is one means of meeting this requirement," 34 C.F.R. § 104.36, "the regulations do not say that it is the *only* means of doing so." *Centennial Sch. Dist. v. Phil L. ex rel. Matthew L.*, 559 F. Supp. 2d 634, 643 (E.D. Pa. 2008); *see also A.M. ex rel. J.M. v. NYC Dep't of Educ.,* 840 F. Supp. 2d 660, 684 (E.D.N.Y. 2012) ("Section 504 affords '[a] recipient that operates a public elementary or

---

[11] Likewise, the IDEA statute includes detailed procedural safeguards, including a requirement that school districts provide "[w]ritten prior notice" to parents whenever they refuse to initiate or change the evaluation of the child. 20 U.S.C. § 1415(b). In addition, school districts are required to provide "[a] copy of the procedural safeguards available to the parents of a child with a disability. . . upon initial referral or parental request for evaluation." *Id.* § 1415(d).

13

secondary education program' wide latitude in fashioning appropriate procedural safeguards" (quoting 34 C.F.R. § 104.36)); *Power ex rel. Power v. Sch. Bd. of Va. Beach*, 276 F. Supp. 2d 515, 519 n.9 (E.D. Va. 2003) ("School systems are free to develop their own procedures with respect to Section 504 students.").The Pennsylvania regulations implementing the requirements of § 504 do not require a response to an oral request for an evaluation. *See* 22 Pa. Code § 15.1 (requiring that "[p]arents shall request in writing that their child be evaluated and provided services," and requiring a school district to send a written response to the parents within twenty-five days of their written request). In the present case, there is no dispute that Parent did not submit a written request for an evaluation. Accordingly, under Pennsylvania's regulations, the District's responsibility to send a written response was never triggered.

Because the District did not withhold any statutorily-required information, the second exception to the IDEA's statute of limitations is not implicated—if it is even applicable under these circumstances. Accordingly, pursuant to the hearing officer's finding, which this Court adopts, that Parent knew or should have known in August 2003 about the alleged action that forms the basis of the complaint, Parent was required to file a due process complaint no later than August 2005. Because Parent did not do so until 2014, Parent's claims are time-barred.

## V. Conclusion

For the reasons set forth above, the District's motion for judgment on the administrative record is granted and the decision of the hearing officer is reversed. A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge